# **EXHIBIT A**

**SUMMONS - CIVIL**
JD-CV-1, Rev. 9-08
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

**See other side for Instructions**

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.

☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.

☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| 70 Huntington St. New London, CT | (860) 443-5363 | 9 / 25 / 2012 |

☒ Judicial District   G.A.   At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) New London

☐ Housing Session   ☐ Number:

Case type code (See list on page 2)   Major: **T**   Minor: **90**

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only) |
|---|---|
| William G. Hahnel 169 Old Colchester Rd, Salem, CT 06420 | |

Telephone number (with area code) (860) 319-2159   Signature of Plaintiff (if self-represented) William G. Hahnel

| Number of Plaintiffs: | Number of Defendants: | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; and Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: Hahnel, William G   Address: 169 Old Colchester Rd, Salem, CT 06420 | P-01 |
| Additional Plaintiff | Name:   Address: | P-02 |
| First Defendant | Name: S.   Address: 8585 N. Stemmons Fwy, Suite 1100, Dallas, TX 85247   aka Drive Financial Svcs | D-50 |
| Additional Defendant | Name: aka Drive Financial Svcs   Address: 3180 Irving Blvd, Dallas, TX 75247 | D-51 |
| Additional Defendant | Name: Registered Agent for Service:   Address: One Corporate center, | D-52 |
| Additional Defendant | Name: Address: Hartford, CT 06103-3220 | D-53 |

**Notice to Each Defendant**

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed (Sign and "X" proper box) | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left   Kate Dorve | Date 8/27/12 |
|---|---|---|---|

If this Summons is signed by a Clerk:

a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

For Court Use Only
File Date

**TRUE COPY ATTEST**
KEVIN SULLIVAN
STATE MARSHAL, HARTFORD COUNTY

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) William G. Hahnel | Date signed 8/27/12 |
|---|---|---|

Name and address of person recognized to prosecute in the amount of $250
William G. Hahnel 169 Old Colchester Rd Salem, CT 06420

| Signed (Official taking recognizance, "X" proper box) | ☐ Commissioner of the Superior Court ☒ Assistant Clerk | Date 8/27/12 | Docket Number |
|---|---|---|---|

(Page 1 of 2)

Paid by check. $250 on 8/27/12

## Instructions

1. *Type or print legibly; sign summons.*
2. *Prepare or photocopy a summons for each defendant.*
3. *Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or more than 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.*
4. *After service has been made by a proper officer, file original papers and officer's return with the clerk of court.*
5. *The party recognized to pay costs must appear personally before the authority taking the recognizance.*
6. *Do not use this form for the following actions:*

   (a) *Family matters (for example divorce, child support, custody, paternity, and visitation matters).*
   (b) *Summary process actions.*
   (c) *Applications for change of name.*

   (d) *Probate appeals.*
   (e) *Administrative appeals.*
   (f) *Proceedings pertaining to arbitration.*
   (g) *Any actions or proceedings in which an attachment, garnishment or replevy is sought.*

## Case Type Codes

| Major Description | Codes Major/Minor | Minor Description | Major Description | Codes Major/Minor | Minor Description |
|---|---|---|---|---|---|
| Contracts | C 00 | Construction - All other | Torts (Other than Vehicular) | T 02 | Defective Premises - Private - Snow or Ice |
| | C 10 | Construction - State and Local | | T 03 | Defective Premises - Private - Other |
| | C 20 | Insurance Policy | | T 11 | Defective Premises - Public - Snow or Ice |
| | C 30 | Specific Performance | | T 12 | Defective Premises - Public - Other |
| | C 40 | Collections | | T 20 | Products Liability - Other than Vehicular |
| | C 90 | All other | | T 28 | Malpractice - Medical |
| Eminent Domain | E 00 | State Highway Condemnation | | T 29 | Malpractice - Legal |
| | E 10 | Redevelopment Condemnation | | T 30 | Malpractice - All other |
| | E 20 | Other State or Municipal Agencies | | T 40 | Assault and Battery |
| | E 30 | Public Utilities & Gas Transmission Companies | | T 50 | Defamation |
| | E 90 | All other | | T 61 | Animals - Dog |
| | | | | T 69 | Animals - Other |
| Miscellaneous | M 00 | Injunction | | T 70 | False Arrest |
| | M 10 | Receivership | | T 71 | Fire Damage |
| | M 20 | Mandamus | | T 90 | All other |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) | Vehicular Torts | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs. Driver(s) |
| | M 40 | Arbitration | | V 04 | Motor Vehicles* - Pedestrian vs Driver |
| | M 50 | Declaratory Judgment | | V 05 | Motor Vehicles* - Property Damage only |
| | M 63 | Bar Discipline | | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | M 66 | Bar Discipline - Reinstatement | | V 09 | Motor Vehicle* - All other |
| | M 68 | Bar Discipline - Inactive Status | | V 10 | Boats |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S. 50a-30 | | V 20 | Airplanes |
| | M 82 | Housing Civil Matters | | V 30 | Railroads |
| | M 83 | Small Claims Transfer to Regular Docket | | V 40 | Snowmobiles |
| | M 84 | Foreign Protective Order | | V 90 | All other |
| | M 90 | All other | | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| Property | P 00 | Foreclosure | | | |
| | P 10 | Partition | | | |
| | P 20 | Quiet Title/Discharge of Mortgage or Lien | Wills, Estates and Trusts | W 10 | Construction of Wills and Trusts |
| | P 30 | Drug Asset Forfeiture - C.G.S. 54-36h | | W 90 | All other |
| | P 90 | All other | | | |

CASE NO:

| | | |
|---|---|---|
| WILLIAM HAHNEL | : | **SUPERIOR COURT** |
| **Plaintiff** | : | **J.D. OF NEW LONDON** |
| v. | | |
| SANTANDER CONSUMER USA, INC a/k/a | : | **AT NEW LONDON** |
| DRIVE FINANCIAL SERVICES, LP | | |
| **Defendants** | : | **JURY TRIAL DEMANDED** |
| DOES 1 – 12) | : | **CIVIL RIGHTS VIOLATIONS** |
| **Co-Defendants** | | |
| | : | |
| | | **August 27, 2012** |

## COMPLAINT

### I. INTRODUCTION

1. This is a suit brought by a consumer who has been subjected to unfair and deceptive collection attempts by Defendants, as well as suffered damages to his credit because of actions of the Defendant, in violation of law.  This action is for violations of the Fair Credit Reporting Act ("FCRA"), the Fair and Accurate Credit Transactions Act of 2003 ("FACTA") 2003-R-0922 §§ *311-319*, 15 U.S.C. § 1681 et seq , the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 et seq., and also includes pendent state law claims for violations of Connecticut's Creditors Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-648 and the regulations promulgated thereto, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq.

### A.   PARTIES

2. Plaintiff William Hahnel ("Plaintiff") is a natural person residing in Salem, Connecticut and is a consumer as that term is defined by the FCRA, FDCPA and the CCPA.  The Plaintiff asserts a right to relief as to questions of law.

3. Defendant Santander Consumer USA, Inc. ("Santander"), 8585 N. Stemmons Fwy, Suite 1100, Dallas, TX  75247 is an Illinois corporation and financial institution that lends funds for consumer transactions such as the financing of automobile purchases, and/or services such

credit accounts, reports information with credit reporting agencies and is therefore regulated under the Fair Credit Reporting Act 15 U.S.C. Sec 1681 et seq., and FACTA 2003-R-0922 *§§ 311-319* and does business with Connecticut residents and/or takes assignment of or services accounts held by Connecticut residents. Santander uses instrumentalities of interstate commerce in its communications with its customers. Santander is a debt collector as that term is defined by the FDCPA and a creditor as that term is defined by the CCPA.

4.   Defendant Drive Financial Services ("Drive"), 3180 Irving Blvd, Dallas, TX  75247 is also an Illinois company (known as Drive Consumer USA, Inc.) that provides financing for automobile purchases by consumers and upon information and belief, became a wholly owned subsidiary of Defendant Santander on or before April 14, 2011. Drive also uses instrumentalities of interstate commerce in its communications with its customers. Drive is a debt collector as that term is defined by the FDCPA and a creditor as that term is defined by the CCPA. Claims against Drive are brought in addition to claims against Santander to the extent that Drive is determined to be a separate company from Santander, and has appeared in Plaintiff's credit reports as a separate entity and is therefore liable under the Fair Credit Reporting Act 15 U.S.C. Sec 1681 et seq, and the Fair and Accurate Credit Transactions Act 2003-R-0922 *§§ 311-319.*

5.   The Defendants are governed under the law by the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. Section §1692, *et seq.* and the Fair Credit Reporting Act ("FCRA") 15 U.S.C. Section §1681, et seq.   The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any alleged debtor and prohibits any false, deceptive or misleading statements and the filing of false, deceptive or misleading documents in a court of law.  The FCRA requires that an investigation be performed, upon the consumer's dispute, and prohibits the reporting of inaccurate and erroneous information

## II.  FACTUAL ALLEGATIONS

2

6. In November, 2007, Plaintiff purchased an automobile and financed the purchase through a loan secured for him by the seller of the vehicle, a dealership in Massachusetts, through Wachovia Bank. The Plaintiff acted in good faith in this transaction with the dealership in Massachusetts and with Wachovia Bank.

7. In late 2009, Plaintiff, who was then a police officer in training, became unemployed due to a concussion he suffered and post-traumatic stress disorder injuries he incurred during that training, and was no longer able to make regular payments on the automobile to HSBC in San Diego, CA, as HSBC had instructed Plaintiff to do in December 2007.

8. On February 2, 2010, Plaintiff contacted HSBC Auto Finance, Inc in San Diego, CA, to whom Plaintiff had been making payments in good faith, in order to have HSBC Auto Finance, Inc. send him verification of his contract, loan documentation and validation, all in an attempt by Plaintiff to establish a basis upon which to possibly reach an agreement or arrangement with regard to the automobile.

9. HSBC Auto Finance, Inc did not respond to Plaintiff with verification or validation of his request and within two months thereafter, HSBC Auto Finance, Inc disappeared from Plaintiff's credit reports, never to be heard from again.

10. In March, 2010, an unknown and foreign entity, "HSBC/SCUSA," appeared in Plaintiff's credit reports, and in May 2010, another unknown and foreign entity, "Santander Consumer," briefly appeared then disappeared in Plaintiff's credit reports. In August, 2010, Plaintiff obtained copies of his credit reports and noticed that both unknown and foreign entities were claiming he owed them an outstanding balance and each were reporting derogatory information in his credit reports in two separate accounts. The two entities were identified in his credit reports as HSBC/SCUSA in Ft. Worth, TX and Santander Consumer USA, in Dallas, TX.

11. Plaintiff mailed letters disputing the credit information to both HSBC/SCUSA and Santander Consumer USA via certified mail, return receipt requested. Both letters were received by each entity in Ft. Worth, TX and Dallas, TX on September 7, 2010.

12. In December, 2010, Plaintiff disputed the HSBC/SCUSA and Santander Consumer USA information that appeared in his credit reports directly to the three credit bureaus.

13. Plaintiff received responses to his dispute from the credit bureaus showing that both HSBC/SCUSA and Santander Consumer USA failed to report to the bureaus that the alleged account information that each was reporting in two alleged accounts was in dispute.

14. Plaintiff received one letter from each entity in response to his disputes and demands for validation. Neither HSBC/SCUSA in Fort Worth, TX nor Santander Consumer USA, Inc in Dallas, TX provided the Plaintiff with ANY proof or evidence that Plaintiff owed either company a debt.

15. Thereafter, during the time period October 11, 2010 through August 23, 2011, Defendants Santander and/or Drive Financial called the Plaintiff and Plaintiff's family, friends and neighbors, and individuals identifying themselves as "Investigators," but no other identification, left abusive, threatening, deceptive recorded messages and conducted unconscionable debt collection acts, in an attempt to collect the balance on the debt that they were alleging in Plaintiff's credit reports, as well as did Santander place pre-recorded, automated calls to Plaintiff's mother from February 2011 through August 23, 2011, attempting to solicit her response back to Santander Consumer USA by return phone call.

16. Plaintiff's father was first contacted by Santander and/or Drive on October 11, 2010, by cell phone, a year after Plaintiff had last transacted with HSBC Auto Finance, Inc. This call came from a female caller representing herself to Plaintiff's father to be a police officer investigating the location of a "stolen vehicle" at the residence of Plaintiff and Plaintiff's father.

17. Also on or about October 11, 2010, Plaintiff received a letter in response to the dispute letters he sent to the Defendant's address in Ft. Worth, TX on or about August 27, 2010. The letter response was simply a statement to Plaintiff that Defendant was reporting correctly to all three credit reporting agencies, yet did not provide one shred of evidence that it had performed an investigation, as is required by law, nor did it provide and proof or evidence that the Plaintiff owed this company a debt. This letter was dated October 6, 2010 and stated that the Defendant had received the Plaintiff's dispute on October 5,

2010, the day prior to the date of the letter. The certified mail confirmation shows September 7, 2010 as the date of their receipt of Plaintiff's dispute.

18. On October 19, 2010, Plaintiff received a phone message on his cell phone from the same female who had phoned his father a few days prior representing herself as a police officer, wanting a return call from Plaintiff in reference to "an ongoing investigation."

19. On or about November 12, 2010 Plaintiff received a response to the letters that were sent to Defendant's Dallas, TX address found in Plaintiff's credit reports, demanding validation of the alleged debt that was being reported in his credit reports. This one paragraph, unsigned letter from the Defendant was dated November 8, 2010 and claimed to have "bought" Plaintiff's contract and to "now own" Plaintiff's loan, yet offered absolutely **no validated information, proof or evidence** to the Plaintiff of such a "fact" stated in this letter to him and provided no evidence of a debt owed by Plaintiff to this entity, whatsoever. This letter did not make a demand of Plaintiff, nor did it ask for any money. It did not state that the Plaintiff was indebted to the sender, nor did it state that the Plaintiff was in default of any contract with anyone, including the sender of the letter.

20. Also on November 12, 2010, Plaintiff received another phone call message on his cell phone from the same female who had phoned his father on or about October 11, 2010 representing herself as a police officer, and again wanted a return call "in regard to the facts of an investigation."

21. Defendants Santander and/or Drive next accosted Plaintiff's father at the residence of Plaintiff and Plaintiff's father on December 12, 2010, demanding to take Plaintiff's vehicle, without providing any legal paperwork or legal authority to do so, and misrepresenting to Plaintiff's father that the "Marshal will be here in 20 minutes" and threatening to Plaintiff's father that, "we can do this the easy way or we can do this the hard way." No legal action had ever been taken against Plaintiff by any entity or company in regard to his vehicle nor had he ever even received a notice of default by any company.

22. Both unknown entities, HSBC/SCUSA and Santander Consumer USA, Inc were, by this time, December 2010, concurrently each reporting derogatory information in Plaintiff's credit reports in two separate alleged accounts.

23. December 2010, Plaintiff noticed an "inquiry" in his credit report from Capital One Auto Finance, in Plano, TX, even though Plaintiff had not requested credit from Capital One Auto Finance.

24. In February, 2011, "Drive Financial" showed as having made an "inquiry" on Plaintiff's credit report, along with various other auto finance companies in Texas.

25. In February, 2011, Plaintiff's credit report showed HSBC/SCUSA as reporting information that the alleged account that it was reporting had been "sold."

26. On February 23, 2011, Plaintiff received an interstate cell phone message, from an individual stating that she was an "Investigator" and that her "firm has been retained by Drive Financial." She said, "a sheriff will impound your vehicle." This call had a Caller ID showing that it had originated from a private cell phone in Maryland, yet when contacted the owner of this phone number did not know anything about this woman who had called Plaintiff, showing this Caller ID.

27. In or about February, 2011, Plaintiff's mother was followed to her home by a strange vehicle, the occupant(s) of which watched her get out of her car, waited for a while, and then drove off.

28. In or about February/March, 2011 Plaintiff's father was again accosted at his home by another representative of Defendant Santander and/or Drive Financial, looking to take Plaintiff's vehicle, without providing any legal paperwork or legal authority to do so.

29. Between February 1, 2011 and August 23, 2011 Santander and/or Drive also phoned Plaintiff's mother approximately twenty-five times, using automated pre-recorded messages, apparently attempting to encourage and solicit her to return these automated calls back to Santander Consumer USA. These phone calls did not reference any debt collection. Plaintiff's mother had no business or any other established relationship with Santander or Drive, and the Plaintiff had not given Santander or Drive his consent for either company to discuss his alleged account information with third parties. Further, the Plaintiff had never given his mother's phone number to either Santander or Drive, Wachovia Bank,

6

HSBC Auto Finance or the auto dealership, and it would have been impossible for his mother's phone number to have been on any loan documentation relative to the Plaintiff's automobile in 2007, as this phone number belonging to Plaintiff's mother in fact was NOT installed in her home until January 29, 2008. These calls were confusing and disconcerting to the Plaintiff's mother and to her family, for the additional reason that, at the same time that she was receiving these automated calls from Defendant Santander (and she many times answered the phone but **never** was there a live person on the line to talk to about these calls) the Plaintiff's mother was also receiving calls from various debt collectors in attempts to collect an alleged debt on behalf of Santander Consumer USA, and those collectors used threatening and harassing means to attempt to collect an alleged debt. These abusive, threatening and harassing debt collectors on behalf of Santander stated in messages that they had been "given" her phone number.  In one recorded message, the debt collector on behalf of Santander Consumer USA, made an accusation of being "in violation of the 'statue' of death by deception," and also stated in a message that "charges would be pressed" against her son.

30. These calls were received concurrently by Plaintiff on his phone and by Plaintiff's mother on her phone two to three times per day, and the debt collector on behalf of Santander admitted to having called Plaintiff's family and friends in attempts to "reach" him, and threatened that the "next step" was to call Plaintiff's neighbors, in order to "avoid having to bring legal court action" against the Plaintiff.

31. The level of unconscionable abuse and harassment upon Plaintiff and Plaintiff's family, friends and neighbors reached such a point that Plaintiff and his mother found it necessary to file a Complaint in the U.S. District Court of Connecticut against Santander Consumer USA, Inc, Drive Financial Services, LP and its debt collector in Chicago, on August 15, 2011.

32. During the litigation of that action, on November 9, 2011, Santander, through its attorney of record in Hartford, CT, offered to settle Plaintiff's claims.

33. During settlement negotiations between the Plaintiff and Santander's counsel of record,, on Friday, December 9, 2011 – the day that the Defendants' Santander and Drive answers were due –

7

two attorneys, Charles Ognibene, Esq and Michael Grant, Esq, representing Defendant Santander, initiated a verbally violent and abusive phone call from an interstate phone number in the Boston, MA area, to Plaintiff's mother, demanding immediate payment of the auto loan balance, or alternatively, demanded that Plaintiff's mother have her son "surrender" the vehicle to their client, using threats and ultimatums. These two representatives of Defendant Santander Consumer USA were strangers, unknown to both Plaintiff and his mother. These counsel did not make the required notice of the rights of the Plaintiff in this demand, under the FDCPA, § 1692e(11).

34. The Defendants had never, until this phone call, demanded any money from the Plaintiff, and the Defendants had never even made any claims for money from the Plaintiff, until this phone call to Plaintiff's mother. The phone calls from the Defendants over that past year only wanted the vehicle, using false statements, threats, abuse, and unconscionable acts. Further, the Defendants had not even answered the Plaintiff's complaint, as of December 9, 2011.

35. Santander, through its counsel, Charles Ognibene, Esq and Michael Grant, Esq, attempted to inflict intentional emotional distress upon Plaintiff and his mother in this December 9, 2011 phone call by further threatening Plaintiff's mother to have her "thrown off" her own Complaint so that the callers would be able to attack the Plaintiff, by filing flurries of motions, claims, accusations and demands, using instant e-filing, without his having aid in litigating his claims and grievances, and threatening that if payment by her son or "surrender" of his vehicle was not made immediately, these attorneys and Santander would immediately pursue counterclaims to recover the amount that they now alleged was owed to them, would seek sanctions under Rule 11 against both claimants, and in retaliation would schedule "grueling" depositions of the Plaintiff.

36. Defendant and these counsels were very aware that Plaintiff was ill, possibly with cancer of the stomach due to severe acid, as for well over a year he had been subjected to the same unconscionable, harassing and abusive debt collection tactics by the Defendant, and he was scheduled for his second gastrointestinal surgery, within the next approx month. Attempting to capitalize on this fact, Santander, through counsel, threatened Plaintiff with bodily injury, by stating to Plaintiff's mother, "If you are

concerned about the health of your son, then you will have him "settle" (surrender the vehicle) with us today." Santander, through counsel, also expressed its opinion about the nature and viability of the Plaintiff's claims, using profane and abusive language to Plaintiff's mother, in attempts to intimidate and shock her into having Plaintiff capitulate to their demands. Further, Santander, through counsel, did not allow Plaintiff's mother to end the abusive, unconscionable debt collection call that was made to her. Counsel did not make the required notice of the rights of the Plaintiff in regard to their demand, under the FDCPA, § 1692e(11).

37. Immediately following the phone call to Plaintiff's mother, after she disconnected their call, these counsels on behalf of Santander attempted to call Plaintiff on his phone and left a message wanting a return call. Again, counsel did not make the required notice of the rights of the Plaintiff in regard to their demand, under the FDCPA, § 1692e(11).

38. On Monday, December 12, 2011, Santander, through counsel Michael Grant, Esq., sent an email addressed to Plaintiff (as well as his mother) in which it repeated the threats and debt collection statements made in his and Ognibene's phone call three days prior. Counsel again did not make the required notice of Plaintiff's rights under the FDCPA, § 1692e(11).

39. On December 14, 2011, Santander, through counsel, sent a second email to Plaintiff (as well as his mother) reiterating its demand for payment or "surrender" of the vehicle by 5pm that day. These emails also threatened Plaintiff and his mother, should they continue to litigate their FCRA, FDCPA and TCPA claims against Santander, in that matter. Counsel again did not make the required notice of Plaintiff's rights under the FDCPA, § 1692e(11).

40. Defendant Santander, through counsel Michael Grant, Esq, continued throughout December 2011 and January 2012 to send numerous intimidating and unwanted emails to the Plaintiff (and his mother), some as late in the evening as 10:59 PM, none of which included the required notice of the Plaintiff's rights under the FDCPA, § 1692e(11).

41. These communications caused Plaintiff additional distress, and caused his physical condition, of which Santander knew or should have known at the time of the violations, to greatly worsen.

42. Because of these abusive, threatening, harassing and unconscionable actions of the Defendant, through its counsel by phone call and constant emails, and in consideration of the Plaintiff's impending scheduled second surgery on January 24, 2012, of which Defendant knew or should have known at the time of the violations,, the Plaintiff and his mother were compelled to capitulate to Defendant's demands that Plaintiffs voluntarily dismiss their claims against the Defendants, under Fed. R. Civ. P. Rule 41(a)1 on January 11, 2012, or else suffer the consequences of continued abuse.

43. In addition, at that time, on four separate occasions, Defendant misrepresented to Plaintiff, independently and also through counsel, that it "owned" and/or "bought" Plaintiff's loan, and therefore could not be brought to bear for damages to the Plaintiff in that action under FDCPA, CCPA and related pendant state claims.

44. However, on January 10, 2012, counsel Michael Grant, on behalf of Santander, refused to provide the Plaintiff with any evidence of these claims of "ownership" or "creditor" by Santander.

45. On January 11, 2012, Plaintiff voluntarily dismissed his claims, under Rule 41 (a) 1, in order to be able to have his surgery and be able to hopefully recover free from continued abuse.

46. On April 13, 2012, the Defendant Santander brought a pre-judgment remedy action in Connecticut State Superior Court against the Plaintiff, containing an affidavit stating that it had purchased "servicing rights" from HSBC Auto Finance, Inc., and thereby admitted to being a third-party debt collector.

47. This affidavit from Santander in support of its pre-judgment remedy application stated that the Santander had perfected its lien on the vehicle. This was untrue, as the title of the vehicle has always shown HSBC Auto Finance, Inc as lien holder and in fact to this very day still shows HSBC Auto Finance, Inc as lien holder.

48. In July 2011, in the midst of the telephone abuse by the Defendant, the Plaintiff had attempted to contact HSBC Auto Finance, Inc by certified letter, and this letter communication to HSBC Auto Finance, Inc in San Diego, CA was returned back to Plaintiff as undeliverable.

49. Additionally, the affidavit from Santander filed with the pre-judgment remedy admitted to

Santander having either given consent, been involved with and/or had knowledge of the December 9,

2012 abusive, profane and threatening debt collection demand phone call to Plaintiff's mother from the

counsels for the Defendant, and this affidavit also admitted to the corresponding abusive and harassing

debt collection emails to Plaintiff from counsel representing Santander Consumer, USA, during the time

period December 12, 2011 through January 12, 2012.

50.   Attached to the summons served on April 13, 2012, the Plaintiff received a notice that the

communication was from a debt collector, and that Plaintiff would have 30 days with which to dispute,

and so on April 30, 2012, the Plaintiff sent a letter of dispute, demanding validation and proof of the

claims of Santander, to its representative attorney in New Haven, CT.

51.   Thereafter, this attorney representative of Santander discontinued all collection activity

pertaining to Santander's pre-judgment remedy action against the Plaintiff.

52.   This same attorney still showed as Santander's attorney of record in this action, at the time

that the Plaintiff received a letter from Holth & Kollman, dated May 29, 2012, claiming representation of

Santander Consumer USA, and saying that it was validating the debt by simply attaching a non-attested

to, computerized alleged list of its fees and charges and payments made to HSBC, which was placed on

Santander Consumer USA letterhead.   Holth & Kollman filed an appearance of behalf of the Defendant

in state Superior Court on June 5, 2012. This letter from Holth & Kollman did contain the consumer

notice that the communication was from a debt collector.

53.   Santander filed two documents as evidence with its complaint on July 9, 2012: a photocopy

of the title of the automobile and a "Power of Attorney" claiming alleged rights to the automobile that

Santander claimed HSBC had given to Santander.

54.   During the litigation of its action against Plaintiff, on that same day, Santander, through its

counsel, made oral misrepresentations to the Court regarding its first piece of filed evidence, by stating

that Santander had "perfected its lien interest," even though the title of the automobile did not show, and

still to this day does not show the name of the Santander, according to the Connecticut Department of

Motor Vehicles.  Counsel then stated to the Court that "page two" had neglected to be filed with its

complaint against the Plaintiff  The Connecticut Dept of Motor Vehicles affirms that there is no "page two" on the title of this automobile.

55.  As of yet, and 1 ½ months later, no "page two" has been filed with the Court, and the Defendant Santander is still not shown as lien holder.

56.  Also, on July 9, 2012, Santander knowingly filed a fraudulent affidavit entitled "Power of Attorney," which affidavit represented that the alleged notary on this document had witnessed and signed the document on a date that was **5 days prior** to the date of the alleged affiant's signature on the document.

57.  To date, no rectification or justification of this has been given.

58.  In fact, on August 16, 2012, the Defendant Santander Consumer USA, Inc provided the Plaintiff with Court-ordered Offers of Proof, which contained at least six more affidavits-- all of which show differing dates of the alleged affiants and the alleged notaries on each document.

59.  On or about August 7, 2012, again during informal settlement discussions that were initiated by Santander by and through its counsel in the pre-judgment remedy action, Holth & Kollman, Michael Grant, Esq, from Boston, MA from his new employment at LeClair Ryan, PC, contacted Plaintiff's defense attorney in that action .

60.  Plaintiff believed that Michael Grant was contacting his attorney in the interest of negotiating a global settlement regarding the claims that Plaintiff's mother had, by this time, filed against Grant, Ognibene, his former firm Edwards Wildman Palmer, LLP, and his client, Santander, regarding the telephone and email communications abuse that she had suffered at the hands of Santander and its counsel. But in fact, Michael Grant, representing Santander Consumer, instead began to speak to Plaintiff's attorney about Santander's position in regard to the alleged debt of the Plaintiff to Santander, and again making statement demands and continuing collection activity against the Plaintiff, without **ever** having verified nor validated that an alleged debt was owed to Santander by the Plaintiff,  nor having ever proved a valid, legal and binding agreement or relationship between Santander and  the Plaintiff, nor a perfected lien on the vehicle.

12

61. Michael Grant then began again to intimidate the Plaintiff, this time attempting to make the Plaintiff believe that his serious and valid claims against Grant's client, Santander, had been "abandoned," as a result of his previous dismissal under Rule 41(a)1 on January 11, 2012.

62. On August 7, 2012, Plaintiff's defense attorney in that matter received a fax letter that continued attempts to intimidate the Plaintiff, such as those made by Michael Grant in his December 9, 2012 phone call and emails. In the same writing style, phraseology and vocabulary that Michael Grant had used in his filings with the Court and in his numerous emails to the Plaintiff, this letter stated intimidations to Plaintiff that his claims had been "abandoned" as a result of the first dismissal in the previous action against Santander Consumer, USA, which dismissal the Plaintiff was coerced into filing, as a result of the fraudulent statements by and the telecommunications abuse and threats of Santander itself, through its attorneys, namely Michael Grant and Charles Ognibene.

63. Through its continued collection activity action in State Superior Court, Defendant Santander Consumer USA has continued in its attempt to inflict abuse upon the Plaintiff, making verbal misrepresentations to the Court and through its use of fraudulent documents / affidavits.

64. In spite of the continued intimidation by Santander, through its attorney Michael Grant, Esq, by way of Santander's counsel in the pre-judgment remedy action, on behalf of Defendant Santander, and in spite of such attempts by Santander, through its counsels to continue to coerce Plaintiff into believing that he must succumb and surrender to Santander's debt collection demands and to believe that he has no recourse as far as his claims of abuse against the Defendants and Defendants' counsel, the Plaintiff here brings his action before this Honorable Court for damages as a result of violations, as Rule 41(a)1 states that the effect of the first dismissal is **without prejudice.**

65. Currently, as of the date August 27, 2012, the Plaintiff's credit reports now show three alleged accounts that have been reporting, and/or are currently reporting and updating inaccurate and derogatory information, for two years since Plaintiff's dispute to the Defendant on August 27, 2010, and have neither been marked in dispute, investigated by the Defendant as required by law, nor proved or validated to the Plaintiff and to the Court.

66. The Plaintiff has been damaged financially and emotionally as result of the two years of abuse, at the hands of the Defendants and Defendant's representatives, debt collectors and legal counsel. Plaintiff's physical condition, which was poor to begin with in 2010 at the start of the Defendants' violations of abuse alleged in this Complaint, has deteriorated severely, as can be evidenced by medical documentation. Plaintiff has exhausted all efforts to resolve his issues with the Defendants, they being intent on their continued abuse of the Plaintiff, with absolutely no proof or validation of any of their claims, and so therefore Plaintiff must now bring his claims for relief here before this Honorable Court.

## V. CLAIMS FOR RELIEF

### COUNT ONE
### Violations of 15 U.S.C. §§ 1681 et seq
### FCRA 15 U.S.C. § 1681s-2(b)

### Under FCRA 15 U.S.C. §§ 1681 §§ 1681n and o

67. Against Defendant Santander Consumer USA, Inc for violations of the Fair Credit Reporting Act ("FCRA")15 U.S.C. § 1681s-2(b) Sec 623(b), as it relates to the Defendant's duties and requirements to perform an investigation when it receives a dispute of erroneous information, and involves the Defendant's duties under Sec 611(a)(2) [§1681i]; as a private right of action is allowed to be enforced according to 623(c), by way of enforcement through Secs 616 and 617 [§§ 1681n and o].

68. Paragraphs 1 through 62 are herein incorporated

69. Failure to mark TWO separate alleged accounts in dispute with THREE separate credit reporting agencies. Plaintiff demands judgment in the amount of $5,000.00

70. Continued reporting and updating erroneous and inaccurate information for a total of 66 months from the time period September 2010 through August 2012. Plaintiff demands judgment in the amount of $61,000.00.

71. Drive Financial Services, LP accessed Plaintiff's report in February 2011, with no

permissible purpose. This is a violation of 15 U.S.C Sec. 1681(b), and has damaged Plaintiff's credit

score by this access and inquiry for every month since February 2011 until the present time. Plaintiff

demands $1,000 from this Defendant for every month that it has damaged Plaintiff's credit score.

## COUNT TWO
### Fair and Accurate Credit Transactions Act of 2003
### (FACTA) 2003-R-0922
### *Enhancing Reports' Accuracy (§§ 311-319)*

72. Paragraphs 1 through 62 are herein incorporated

73. Defendant failed to mark TWO separate alleged accounts in dispute with THREE separate

credit reporting agencies. Plaintiff demands judgment in the amount of $5,000.00

74. Defendant continued reporting and updating erroneous and inaccurate information for a total
of 66 months from the time period September 2010 through August 2012. Plaintiff demands judgment in
the amount of $61,000.

75. Drive Financial Services, LP accessed Plaintiff's report in February 2011, with no

permissible purpose. Plaintiff credit score has been damaged by $1,000 for every month that this Co-

Defendant has appeared as an inquiry in Plaintiff's credit reports from February 2011 until present time.

## COUNT THREE
### Violations of 15 U.S.C. §§ 1692 et seq.

76. Paragraphs 1 through 61 are herein incorporated.

77. Santander's and Drive's collection activities, as described above, are in violation of the

FairDebt Collection Practices Act.

78. Santander and Drive violated the FDCPA, 15 U.S.C. § 1692e(2)(A) when it failed to report to

the credit bureaus, when reporting information on two separate accounts, that the alleged accounts being

reported were disputed by the consumer, and which were misrepresentations of the character, amount or

legal status of the accounts.

79. Santander and Drive violated the FDCPA, 15 U.S.C. § 1692e(8) when it failed to report to the credit bureaus when reporting information in two separate accounts about the auto loan that the loan was disputed, which is the communication of credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

80. Santander and Drive violated the FDCPA, 15 U.S.C. § 1692e when its counsel phoned Plaintiff's mother and emailed Plaintiff in an attempt to collect the debt and:

      a.    Threatened to take action that it did not intend to take or could not legally take, in violation of § 1692e(5) by threatening to file counterclaims for collection of the debt

      b.    used profane language in its discussions about the claims, in violation of § 1692d

      c.    failed to give the notices required by § 1692e(11) in its communications with Plaintiff regarding the alleged accounts

81. Santander and Drive further violated the FDCPA, 15 U.S.C. §§ 1692b and 1692c(b) when it called Plaintiff's mother, through its debt collector in Chicago, multiple times in August 2011 and also prior to that date, in attempts to collect the balance on their alleged account when she was neither the co-signor on the account nor had Santander been given consent by Plaintiff to discuss any alleged account with third parties. Defendants Santander and Drive were fully aware of Plaintiff's home address and telephone number, and so did not need to inquire of third parties as to Plaintiff's location information.

82. Santander and Drive further violated the FDCPA, 15 U.S.C. §§ 1692b and 1692c(b) when it called Plaintiff's 88 year old grandfather in California, through its debt collector in Chicago, in 2011, when he was neither the co-signor on any account nor had Santander been given consent by Plaintiff to discuss any alleged account with third parties. Defendant Santander was fully aware of Plaintiff's home address and telephone number, and so did not need to inquire of third parties as to Plaintiff's location information.

83. Santander further violated the FDCPA, 15 U.S.C. §§ 1692b and 1692c(b) when it called Plaintiff's father in October 2010 and when it accosted Plaintiff's father in December 2010 and in February/March 2011, in order to attempt to collect the balance on an alleged debt. Plaintiff's father was

neither the co-signor on the loan, nor had Santander ever been given consent by Plaintiff to discuss any alleged account with third parties.  Defendant Santander was fully aware of Plaintiff's home address and telephone number, and so did not need to inquire of third parties as to Plaintiff's location information

　84.  For Santander's violations of the Fair Debt Collection Practices Act as described above, Plaintiff William Hahnel seeks his damages pursuant to § 1692k.

**COUNT FOUR**
**Violations of C.G.S. § 36a-648**

85.  Paragraphs 1 through 23 are herein incorporated.

86.  Santander's and Drive's collection activities, as described above, are in violation of the Connecticut Creditors Collection Practices Act.

87.  Santander violated the CCPA, Conn. Ag. Reg. § 36a-647-6(2)(A) when it failed to report to the credit bureaus when reporting information about the auto loan that the loan was disputed, which was a misrepresentation of the character, amount or legal status of the alleged account.

88.  Santander violated the CCPA, Conn. Ag. Reg. § 36a-647-6(9) when it failed to report to the credit bureaus when reporting information about the auto loan that the loan was disputed, which is the communication of credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

89.  Santander violated the CCPA, Conn. Ag. Reg. § 36a-647-6 when its counsel phoned Plaintiff's mother and emailed the Plaintiff in an attempt to collect the alleged debt and:

    a.    Threatened to take action that it did not intend to take or could not legally take, in violation of § 36a-647-6(6) by threatening to file counterclaims for collection of their alleged debt

    b.  used profane language in its discussions about Plaintiff's claims, in violation of § 36a-647-5(2)

    c.  failed to give the notices required by § 36a-647-6(12) in its communications with Plaintiff regarding their alleged account

17

90. Santander and Drive further violated the CCPA, Conn. Ag. Regs. §§ 36a-647-4(b) and 36a-647-3 when it called Plaintiff's mother multiple times, through its debt collector, in August, 2011 and prior to that date, to collect the balance on the alleged account when she was neither the co-signor on the alleged account nor had Santander been given consent by Plaintiff to discuss any alleged account with third parties. Defendant Santander was fully aware of Plaintiff's home address and phone number, and so did not need to inquire of third parties as to Plaintiff's location information.

91. For Santander's violations of the CCPA, as described above, Plaintiff William Hahnel seeks his damages pursuant to C.G.S. § 36a-648(a).

### COUNT FIVE
### Violations of Conn. Stat. §§ 42-110a et seq.

92. Paragraphs 1 through 23 are herein incorporated.

93. Santander violated Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42a-110 et seq. in its attempts to collect the balance allegedly owed by William Hahnel as described above.

94. Santander's violations of the FDCPA and CCPA were unfair, immoral, unethical, oppressive and unscrupulous and such as to cause substantial injury to consumers, in particular, Plaintiff William Hahnel.

95. Plaintiff has sustained an ascertainable loss as a result of Santander's acts in the form of financial loss and physical distress, which Santander knew or should have known Plaintiff was experiencing when it engaged in the unfair acts and practices, and is therefore liable to Plaintiff for that loss as well as, in the discretion of the Court, punitive damages pursuant to Conn. Gen. Stat. § 42-110g..

### TRIAL BY JURY DEMANDED

Wherefore, Plaintiff seeks:

Damages pursuant to the Fair Credit Reporting Act ("FCRA")15 U.S.C  1681 et seq;

Fair and Accurate Credit Transactions Act ("FACTA") 2003-R-0922 §§ 311-319

Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. 1692 *et seq*;

Connecticut Creditor's Practices Act  ("CCPA"); and,

Connecticut Unfair Trade Practices Act. ("CUTPA").

Respectfully submitted,

August 26, 2012

William G. Hahnel
169 Old Colchester Rd
Salem, CT  06420
(860) 319-7159  bhahnel85@gmail.com

**A TRUE COPY**
**ATTEST:**

KEVIN SULLIVAN
STATE MARSHAL, HARTFORD COUNTY

10